UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

       - against -

UNITED INDUSTRIES & CONSTRUCTION
CORP.,

        Defendant.

-------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
12-CV-5732 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Scottsdale Insurance Company ("Scottsdale") initiated this action on November

20, 2012, seeking, among other things, a declaration from the Court that it is not required to

defend United Industries & Construction Corp. ("United") against two underlying lawsuits.

(Compl. (Doc. No. 1) at 14.)  Scottsdale subsequently disclaimed its duty to defend United

against an additional lawsuit, and on January 15, 2013 filed an Amended Complaint seeking the

same relief with respect to all three underlying lawsuits (collectively, the "Underlying Actions").

(Am. Compl. (Doc. No. 4) at 16.)

      On October 10, 2014, each party moved for summary judgment.  For the reasons set forth

below, each party's motion is granted in part and denied in part.

## BACKGROUND[1]

### 1.  The Underlying Actions

      United is a company based in New York City whose sole shareholder is Antonio

Morales.  (Def.'s Resp. to Pl.'s Rule 56.1 Statement (Doc. No. 29-23) at ¶ 2.)  United was

---

[1] The following facts have been taken from the parties' Statements of Undisputed Facts Pursuant to Local Rule 56.1
or documents incorporated therein.  The facts are not in dispute, except where noted.

incorporated in 2007 and is currently in the business of excavation, foundation and demolition work.  (*See* Morales Deposition (Doc. No. 30-15) at 8, 11.)

In each of the Underlying Actions, the plaintiffs therein have alleged that they suffered property damage caused by excavation, demolition, and construction work performed by United and others at 755 and 757 60th Street (the "60th Street Location") and 2576 National Drive (the "National Drive Location"), in Brooklyn, New York.  (Ye Compl. (Doc. No. 29-8); Li Compl. (Doc. No. 29-9); Azadalli Compl. (Doc. No. 29-10); *see generally* Def.'s Resp. to Pl.'s Rule 56.1 Statement at ¶ 4 (not contesting incorporation of the complaints into 56.1 Statement).)  The Underlying Actions are *Ye v. Golden City 8 Realty LLC* (Kings Cty. Sup. Ct. Index Nos. 11874/2010 and 75286/2011) (the "Ye Action"); *Li v. Golden City 8 Realty LLC* (Kings Cty. Sup. Ct. Index No. 015128/2012) (the "Li Action"); and *Azadalli v. Sourkoff Corp.* (Kings Cty. Sup. Ct. Index No. 7089/2010) (the "Azadalli Action").  (Def.'s Resp. to Pl.'s Rule 56.1 Statement at ¶ 4.)

The Ye Action was initiated on May 11, 2010 against United, Golden City 8 Realty, Inc. ("Golden City"), Schulman Homes, Inc. ("Schulman"), and Kam Cheung Construction, Inc. ("Kam Cheung").  (Ye Compl. at 2, 13 (ECF Pagination).)  According to Morales' testimony, United had performed a hand-demolition job at the 60th Street Location in 2008.  (*See* Morales Deposition at 37–38, 45.)  The plaintiffs in the Ye Action allege that "[o]n or about, prior to and after June 29, 2009," United, Schulman, and Kam Cheung performed "excavation, demolition, and construction" work at the 60th Street Location that caused damage to their premises at 749 and 753 60th Street.  (Ye Compl. at ¶¶ 8–9, 10–12, 20–21.)

The Li Action is similar to the Ye Action.  It was initiated on July 21, 2012 against United, Golden City, Schulman, Kam Cheung, and LMW Engineering Group LLC ("LMW").

(Li Compl. at 2, 15 (ECF Pagination).)  The plaintiffs therein allege that "[o]n or about, prior to and after June 29, 2009 and continuing thereafter," United, Schulman, Kam Cheung, and LMW performed excavation, demolition, and construction work at the 60th Street Location that caused damage to their premises located 752 and 754 60th Street.  (*Id.* at ¶¶ 8–9, 10–12, 22–23.)  More specifically, they allege that

> [d]uring the course of excavation[,] demolition and construction, Defendants caused and continue to cause extensive damage to Plaintiff's [sic] property's foundation walls and structure including Plaintiff's [sic] property interior walls, and causing among other things: 1) cracks and disturbances in the foundation; 2) cracks and floor separation; 3) movement of Plaintiff's [sic] walls away from the building; 4) cracked exterior walls, 5) cracked interior walls; 6) doors and windows that no longer plumb and that are out of alignment; 7) cracked sidewalk; and 8) sagging floors.

(*Id.* at ¶ 28.)

The Azadalli Action was initiated on March 22, 2010, and on December 14, 2010 the plaintiffs therein filed an amended complaint against United and several other defendants. (Azadalli Compl. at 2, 4, 11 (ECF Pagination).)  Morales testified that United had excavated several truckloads of dirt from the National Drive Location one day in the summer of 2008, for which it was paid approximately $2,500.   The Azadalli plaintiffs allege that, on or about August 2009, as a result of the defendants' excavation and construction work at the National Drive Location, their adjacent property "suffered physical damage, including but not limited to the total destruction of the outdoor patio deck, collapse of the brick retaining wall, compromise to the structural integrity of the house and damage to the water and natural gas lines."  (Azadalli Complaint at ¶¶ 38–39.)  The Azadalli Action complaint further alleges, in relevant part, that

> [t]he proximate cause of the damage to plaintiffs' property was the negligence, carelessness and recklessness of the defendants . . . in failing to use due care in the construction, demolition, excavation, development work performed upon the premises located at [the National Drive Location]; in failing to use due care in the underpinning, shoring, sheeting, bracing, reinforcing, and/or lateral supporting or

adjoining properties during said work; . . . in failing to insure that the adjoining
properties were safeguarded, underpinned and supported; . . . in the excavation
operations, underpinning, stability; in permitting and allowing dangerous and
defective conditions to exist within the construction area; in creating excessive
vibrations during said work; [and] in causing earth movement and rock sliding in
the area under and around the adjoining properties . . . .

(*Id.* at ¶ 41.)  On July 23, 2014, the New York Supreme Court granted United's motion for

summary judgment and dismissed the Azadalli Action against United.  (Azadalli Decision (Doc.

No. 30-12) at 1.)

## 2.  The Insurance Policies

From August 1, 2007 through August 1, 2009, Scottsdale provided insurance to United

under three successive policies:  (1) General Liability Policy No. CLS1393437 for the period

from August 1, 2007 to August 1, 2008 (the "2007 Policy"); (2) General Liability Policy No.

CLS1512440 for the period from August 1, 2008 to August 1, 2009 (the "2008 Policy"); and

(3) General Liability Policy No. CPS1065636 for the period from August 1, 2009 to August 1,

2010 (the "2009 Policy", and along with the 2007 Policy and the 2008 Policy, the "Scottsdale

Policies").  (Def.'s Resp. to Pl.'s Rule 56.1 Statement at ¶ 25.)  Each of the Scottsdale Policies

states the following:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies.  We will have the right and duty to defend the insured against any "suit"
> seeking those damages.  However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply. . . .  This insurance applies to "bodily injury"
> and "property damage" only if . . . [t]he "bodily injury" or "property damage"
> occurs during the policy period . . . .

(2007 Policy (Doc. No. 29-17) at ¶¶ 1(a), 1(b)(2); 2008 Policy (Doc. No. 29-18) at ¶¶ 1(a),

1(b)(2); 2009 Policy (Doc. No. 29-19) at ¶¶ 1(a), 1(b)(2); *see generally* Def.'s Resp. to Pl.'s Rule

56.1 Statement at ¶ 26 (not contesting incorporation of the Scottsdale Policies into 56.1

Statement).)

Each of the Scottsdale Policies carves out various exclusions from coverage, and each of

Scottsdale's first five causes of action in the Amended Complaint cites a different exclusion as

the basis for Scottsdale's requested declaration that it is not required to defend United against the

Underlying Actions. The first cause of action cites the following "Earth and Land Movement

Exclusion," which appears in the 2007 Policy and 2008 Policy:

> This policy does not apply to . . . "property damage" . . . or damages . . . caused directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land, regardless of:
>
> 1. The cause or source of such earth or land movement;
>
> 2. Whether such earth or land movement arises from natural or man-made forces or causes; or
>
> 3. Whether such earth or land movement occurs:
>
>    a. Independently of;
>
>    b. As a result of;
>
>    c. In concurrence or connection; or
>
>    d. In any sequence associated
>
>    with any other natural or man-made forces, causes, events or operations.
>
> Earth or land movement includes, but is not limited to, subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather.

(2007 Policy at 47 (ECF Pagination); 2008 Policy at 48 (ECF Pagination).)

The second cause of action cites the following "Continuous or Ongoing Damages

Exclusion," which appears in each of the Scottsdale Policies:

This insurance does not apply to "property damage" when any of the following apply:

. . .

1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

(2007 Policy at 36; 2008 Policy at 36; 2009 Policy at 39.)

The third cause of action cites the following "Demolition Exclusion," which appears in

the 2007 Policy and 2008 Policy:

This policy does not provide coverage for:

1. BODILY INJURY or PROPERTY DAMAGE arising out of any blasting operations; or

2. BODILY INJURY or PROPERTY DAMAGE arising from the use of a "ball and chain" or similar apparatus; or

3. BODILY INJURY or PROPERTY DAMAGE arising out of the demolition of any building or structure which has an original height in excess of three stories or original height in excess of fifty (50) feet; or

4. PROPERTY DAMAGE to any abutting, adjoining, common or party wall.

(2007 Policy at 33; 2008 Policy at 33.)

The fourth cause of action cites an "Expected or Intended Injury Exclusion," which

appears in each of the Scottsdale Polices and excludes from coverage "'[b]odily injury' or

'property damage' expected or intended from the standpoint of the insured." (2007 Policy at ¶

2(a); 2008 Policy at ¶ 2(a); 2009 Policy at ¶ 2(a).)

The fifth cause of action cites the following "Punitive or Exemplary Damage Exclusion," which appears in each of the Scottsdale Policies:

> This policy does not apply to a claim of or indemnification for punitive or exemplary damages.

> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

> If suit is brought against any Insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

(2007 Policy at 44–45; 2008 Policy at 45–46; 2009 Policy at 50.)

## DISCUSSION

Scottsdale seeks an order from the Court: (1) declaring that Scottsdale has no obligation to defend or indemnify United against the Underlying Actions; and (2) ordering United to reimburse Scottsdale for the costs it has incurred thus far defending against the Underlying Actions. (Pl.'s Mot. Summ. J. (Doc. No. 29) at 1.) United seeks an order from the Court: (1) declaring that Scottsdale is obligated to defend and indemnify United against the Underlying Actions; and (2) reimbursing United for its legal fees and expenses associated with the defense of the instant action. (Def.'s Mot. Summ. J. (Doc. No. 30) at 1.)

### 1. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## 2. Waiver and Estoppel

United first argues that Scottsdale must defend United under the doctrines of waiver and estoppel. United appears to abandon its waiver arguments in its reply to Scottsdale's opposition. (*See* Def.'s Reply Summ. J. (Doc. No. 30-27) 1–2.) However, United has a valid argument on estoppel. It is undisputed that Scottsdale did not declare its intent to disclaim its duty to defend against the Ye Action and Li Action until October 22, 2012 and against the Azadalli Action until January 7, 2013. (*See* Ye Action and Li Action Disclaimer (Doc. No. 30-13); Azadalli Action Disclaimer (Doc. No. 30-14); *see also* Pl.'s Resp. Def.'s Rule 56.1 Statement at ¶¶ 19–20) (not contesting incorporation of the disclaimers into 56.1 Statement).) Scottsdale undertook the defense of these actions, and United relied on that defense. "Under New York common law, an insurer that undertakes the defense of an insured may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insure suffered prejudice as a result of that delay." *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) (citing *Globe Indem. Co. v. Franklin Paving Co.*, 77 A.D.2d 581 (N.Y. App. Div. 1980)). Scottsdale does not even attempt to claim that this delay is reasonable and instead claims that United suffered no prejudice. (*See* Pl.'s Mem. Opp'n Summ. J. at 5–6.) However, that assertion fails.

"[P]rejudice to an insured may be presumed 'where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense.'" *Bluestein*, 276 F.3d at 122 (citing *Albert J. Schiff Assocs. Inc. v. Flack*, 51 N.Y.2d 692, 699 (1980)); *see also*, *Adams v. Chicago Ins. Co.*, 49 F. App'x 346, 349 (2d Cir. 2002) (citing *Bluestein* and *Albert*). "The recognition of such an

estoppel [where an insurer has defended against an action] has as its basis the detrimental

reliance suffered by the insured in the loss of the right to control its own defense." *Nat'l Indem*

*Co. v. Ryder Truck Rental*, 230 A.D.2d 720, 721 (N.Y. App. Div. 1996); *see also Globe Indem.*,

77 A.D.2d at 582 ("[I]t is equally well settled that where an insurer has undertaken the defense of

an action on behalf of an insured, with knowledge of the facts constituting a defense to coverage

under the policy, and where, during the interim, the insured is thereby deprived of the control of

his defense, the former may be estopped from asserting that its policy does not cover the

underlying claim." (quoting *Moore Constr. Co. v U.S. Fid. & Guar. Co.*, 293 N.Y. 119, 123–24

(1944))).[2] Thus, United has raised a valid estoppel argument against Scottsdale. Moreover, as

discussed below, on the merits, Scottsdale has a duty to defend the Underlying Actions.

### 3. Duty to Defend

Under New York law, an insurer's duty to defend the insured is "exceedingly broad."

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) (citing *Colon v. Aetna*

*Life & Cas. Inc.*, 66 N.Y.2d 6, 8 (1985)). In order to determine whether the duty to defend

exists, the Court must compare the "four corners of the underlying complaint" to the terms of the

insurance policies. *Id.* at 83 (citing *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d

298, 302 (1989); *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65–67 (1991)). The duty

to defend arises "whenever the allegations in a complaint state a cause of action that gives rise to

the reasonable possibility of recovery under the policy." *Fitzpatrick*, 78 N.Y.2d at 61. "The

allegations of the complaint must be liberally construed and if they arguably fall within a risk

---

[2] Case cited by Scottsdale in opposition are inapplicable to the instant action. *See, e.g.*, *Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 273 (E.D.N.Y. 2014) (insurer expressly reserved its rights on two separate occasions); *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D.3d 32, 36 (N.Y. App. Div. 2006) (noting well-settled law regarding estoppel but holding that "an insurer should not be charged with the obligation to reserve its rights against unknown policy defenses").

covered by the policies, then the insurer is required to defend regardless of how groundless, false or baseless the suit may be." *Brooklyn Law Sch. v. Aetna Cas. & Sur. Co.*, 661 F. Supp. 445, 449–50 (E.D.N.Y. 1987) (citing *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325–26, 361 (1974), *aff'd*, (2d Cir. 1988)).

In order to be relieved of its duty to defend based on a policy exclusion, the insurer "bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454 (E.D.N.Y. 2012) (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)).

Because an insurer has a duty to defend against any possible claim that it may ultimately be required to indemnify against, courts have often noted that an insurer's duty to defend is distinct from and broader than its duty to indemnify. *Fitzpatrick*, 78 N.Y.2d at 65 ("[A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage"); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) ("Where an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify."). The duty to defend therefore endures "until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d. Cir. 2001).

Here, as discussed below, it is far from certain whether the causes of action alleged in the Underlying Actions are excluded under the Scottsdale Policies. Thus, Scottsdale has a duty to defend United in all three actions.[3]

Scottsdale first contends that it is not obligated to defend United because each of the Underlying Actions falls within the scope of the Earth and Land Movement Exclusion, to which United repeatedly objects that none of the Underlying Actions allege damages caused "*exclusively* by earth or land movement." (*See, e.g.*, Def.'s Mem. Opp'n Summ. J. (Doc. 29-22) at 2, 3, 10, 12.) Scottsdale responds that it is irrelevant whether the Underlying Actions allege that the property damage was caused exclusively by earth or land movement, because according to the language in the exclusion, "[a]ll that is required in order for coverage for such property damage to be excluded is that the property damage was 'caused, directly or indirectly, *in whole or in part*' by earth or land movement." (Pl.'s Reply Summ. J. (Doc. No. 29-34) at 5 (citations omitted).)

But Scottsdale misses the point. It is not enough that each of the Underlying Actions allege that *some* damages may have been caused by earth and land movement. In order to avoid its duty to defend, Scottsdale must show with certainty that all possible damages for which United might ultimately be held liable would, at least in part, be attributed to it. The question, therefore, is not whether the Underlying Actions *exclusively* allege damages caused by earth and land movement, but whether they *necessarily* do. *See Frontier*, 91 N.Y.2d at 175 ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.").

---

[3] The fact that the Azadalli Action has already been dismissed does not affect the Court's analysis as to whether Scottsdale was required to defend United. *Cf. Century 21*, 442 F.3d at 84 ("[E]ven if [the insurer's] duty to defend may have ceased, [it] is not relieved of paying for [the insured's] defense up to the point it would have been certain in that proceeding that no further defense was owed under the insurance contract.").

Scottsdale has not shown that to be the case here.[4]  The complaints in the Underlying

Actions include allegations of damage caused *both* by excavation as well as from demolition

and/or construction.  Thus, based on the pleadings in the Underlying Actions, it is reasonably

possible that United may ultimately be found liable for damages that fall entirely outside of the

Earth and Land Movement Exclusion.  *See Snyder v. Nat'l Union Fire Ins. Co.,* 688 F. Supp.

932, 938 (S.D.N.Y. 1988) ("[The insurer] has not proven that the allegations of the complaint

cast that pleading solely and entirely within the policy exclusions . . .  The factfinder could

determine that [the insured] committed separate and independent acts . . . that would bring his

claim within the coverage of the policy and outside the scope of any exclusion.").[5]

---

[4] The cases cited by Scottsdale dealt with underlying complaints that alleged damages that could only have been attributed, at least in part, to earth or land movement.  *See Scottsdale Ins. Co. v. LCB Const. LLC*, No. 11-CV-3316 (ARR) (JMA), 2012 WL 1038829, at *1 (E.D.N.Y. Feb. 14, 2012) (complaint alleged that "defendants excavated and removed soil adjacent to and below [underlying property's] foundation without properly underpinning thereby resulting in differential settlement, cracking, undermining of the foundation and a decrease in the foundation's load bearing capacity") (alteration in original); *Brice v. State Farm Fire and Cas. Co.*, 761 F. Supp. 2d 96, 98 (S.D.N.Y. 2010) ("[I]it is undisputed in this case . . . that the underpinning was flawed and as a result, earth slid away beneath plaintiff's building causing damage.") (citation omitted); *Bentoria Holdings, Inc.*, 20 N.Y.3d at 68 ("The building suffered cracks as a result of an excavation being conducted on the lot next door to it."); *Cali v. Merrimack Mut. Fire Ins. Co.*, 43 A.D.3d 415, 417 (N.Y. App. Div. 2007) ("Here, the loss was attributable to the resultant earth movement and sinking, even though the movement was precipitated, at least in part, by decayed wood in the earth beneath the foundation slab."); *Sheehan v. State Farm Fire & Cas. Co.*, 239 A.D.2d 486, 487 (N.Y. App. Div. 1997) ("In the case at bar, it is clear that the proximate cause of the plaintiffs' loss was 'earth movement', despite the fact that the earth movement may have been occasioned by the decomposition of buried organic materials."); *Kula v. State Farm Fire & Cas. Co.*, 212 A.D.2d 16, 20 (N.Y. App. Div. 1995) (Plaintiff did not contest that damages were caused by earth movement, but argued that the exclusion did not apply where "a broken water pipe caused the soil beneath plaintiffs' home to wash away").

[5] Scottsdale's Rule 56.1 Statement cites two unsworn third-party reports in support of its argument that the damages in the Underlying Actions were caused by earth and land movement.  (*See* Pl.'s 56.1 Statement (Doc. No. 29-2) at ¶¶ 12–13, 23–24.)  United objects to Scottsdale's reference to these unsworn reports, arguing that they do not satisfy the admissibility requirements under Rule 56(e) and urging the Court to disregard them.  (Def.'s Mem. Opp'n Summ. J. at 11 (citing *Glowczenski v. Taser Int'l Inc.*, No. 04-CV-4052 (WDW), 2010 WL 1957289, at *2 (E.D.N.Y. May 13, 2010)).)

The Court agrees.  Scottsdale's explanation that it provided the materials "to be consulted" is irrelevant and does nothing to distinguish the current case from *Glowczenski*.  Further, its assertion that state law determines the admissibility of expert reports is simply incorrect.  Because the third-party reports cited by Scottsdale in its 56.1 Statement are unsworn, the Court does not consider them in connection with this decision.  *See Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, n.12 (E.D.N.Y. 2013) ("Unsworn letters and statements made without personal knowledge are not admissible evidence under Rule 56 of the Federal Rules of Civil Procedure and cannot be considered in connection with a summary judgment motion." citing *Smeraldo v. City of Jamestown*, 512 F. App'x. 32, 34 (2d Cir. 2013)); *see also Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997)

This conclusion would seem to reward United for the vagueness of its adversaries' complaints in the Underlying Actions. But that outcome is mandated by the broad requirements of the duty to defend and Scottsdale's corresponding heavy burden to demonstrate that there is no reasonable possibility that the Underlying Actions could fall outside the scope of the exclusion. *See Greenberg v. Nat'l Chiropractic Mut. Ins. Co.,* No. 96-CV-0052 (JSM), 1996 WL 374145, at *2 (S.D.N.Y. July 3, 1996) ("If the Court cannot determine the theory of liability on which the complainant is proceeding, the insurer is required to defend the insured.") (citing *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162–63 (1992)); *Kuzmier v. New Amsterdam Cas. Co.*, 155 N.Y.S.2d 301, 304 (Sup. Ct. 1956) ("It would be utterly illogical to hold that the vague form in which the trustees saw fit to cast their complaint relieved the defendant of the duty to defend a suit to enforce a liability against which it had insured the plaintiff."). Scottsdale's duty to defend thus endures unless and until it clarifies with certainty that any potential claims fall entirely outside of the scope of the coverage owed to United. *See Century 21*, 442 F.3d at 84 ("[I]f the duty to defend cannot be eliminated by examining the face of a pleading, an insurer may nevertheless 'extricate itself early' through the use of discovery devices[]." (quoting *Hugo Boss*, 252 F.3d at 621–22)); *Cohen v. Jacoby*, 199 N.Y.S.2d 537, 539–40 (Sup. Ct. 1960) ("If the complaint is so vague and indefinite that one cannot conclusively rule out coverage, then the Company has the responsibility under the policy to defend the insured. If the complaint is vague and indefinite, the Company may use the weapons available for pleading clarification, and it has

---

("[U]nsworn letters do not satisfy the requirements of Fed. R. Civ. P. 56(e) and therefore cannot defeat [a] motion for summary judgment."); *United States v. All Right, Title & Interest in Real Prop. & Appurtenances*, 77 F.3d 648, 657–58 (2d Cir. 1996) ("The submission of [the] unsworn letter was an inappropriate response to the government's motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."); *Berk v. St. Vincent's Hosp. & Med. Center*, 380 F. Supp. 2d 334, 353 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support.").

the duty to defend, at least up to the point where it becomes patently obvious from clarified pleadings that the cause of action pleaded was not covered by the policy.").[6]

Similarly, the other policy exclusions on which Scottsdale seeks to disclaim coverage do not necessarily preclude coverage of the claims alleged in the Underlying Actions. As noted, all three underlying actions allege damages caused by "demolition and construction," in addition to excavation. Under the Demolition Exclusion, Scottsdale is not required to provide coverage for property damage arising out of certain limited situations: (1) blasting operations, (2) use of a "ball and chain" or similar apparatus; (3) the demolition of any building or structure which has an original height in excess of three stories or original height in excess of fifty feet; or (4) damage to any abutting, adjoining, common or party wall. The Underlying Actions in no way suggest that any of the property damage was caused by any of the limited circumstances excluded under the policy. Thus, it is reasonably possible that Scottsdale will ultimately be required to indemnify United in the Underlying Actions notwithstanding the Demolition Exclusion, and Scottsdale cannot disclaim a duty to defend under this exclusion.

---

[6] Scottsdale also seeks to disclaim its duty to defend and indemnify United in the Underlying Actions under the 2007 policy based on the provision requiring that damages occur "during the policy period", and under the 2009 Policy based on the Continuous or Ongoing Damages Exclusion, which excludes any property damages that "first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy." The Ye Action alleges that the actionable conduct took place "[o]n or about, prior to and after June 29, 2009," while the Li Action alleges that it took places "[o]n or about, prior to and after June 29, 2009 and continuing thereafter." United's counsel, however, took the position that it performed the work at the 60th Street Location in October 2008. (*See* Pl.'s 56.1 Statement at ¶ 5.) The Azadalli Action alleges that the actionable conduct took place "[o]n or about August 2009." Citing Morales' deposition, Scottsdale asserts that United performed the work at the National Drive Location in the summer of 2008, but his testimony was hardly certain on this point. (*See* Dep. Antonio Morales (Doc. No. 29-13) at 13 ("I received a phone call a while back, I don't remember what year . . . right around '08, it could have been.").)

Given the broad pleadings in the Underlying Actions which fix the dates of United's actions in, around, and on the "cusp" of each of these policies, as well as Scottsdale's own assertions regarding discrepancies in the dates of United's actions, Scottsdale cannot disclaim its duty to defend and indemnify based on controlling dates of the policies. Much like the issues relating to whether the policy exclusions apply, these are issues that cannot be ascertained with certainty here and thus may not serve as the basis to disclaim either a duty to defend or a duty to indemnify. *See, e.g., Cohen v. Jacoby*, 199 N.Y.S.2d at 539–40.

As to the Expected or Intended Damages Exclusion, Scottsdale similarly fails to show that the allegations in the Underlying Actions necessarily fall within the scope of the exclusion. Although Scottsdale is correct that certain portions of the complaints in the Underlying Actions allege intentional conduct, each also asserts causes of actions based in negligence. (*See, e.g.*, Ye Compl. at ¶ 37; Li Compl. at ¶ 46; Azadalli Compl. at ¶ 41.) It is therefore reasonably possible that Scottsdale will ultimately be required to indemnify United for damages falling outside of the scope of this exclusion. *See Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137–38 (2006) (insurer could not avail itself of exclusion for intentional acts where complaint alleged both negligence and intentional conduct). Summary judgment is awarded to United as to the Expected or Intended Damages Exclusion.

Finally, Scottsdale seeks to disclaim its duty to defend United based on the Punitive or Exemplary Damages Exclusion. But even without recourse to the broad contours of the duty to defend, the Punitive or Exemplary Damages Exclusion expressly states that "[i]f suit is brought against any Insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action." In this case, each of the Underlying Actions seeks, among other things, compensation for damage to the properties. (*See, e.g.*, Ye Compl. at ¶ 42; Li Compl. at ¶ 37; Azadalli Compl. ¶¶ 43–44.) Scottsdale therefore may not disclaim its duty to defend under this exclusion.

### 4. Duty to Indemnify

Scottsdale next seeks a declaration that it is not required to indemnify United against the Underlying Actions; United cross-moves for a declaration that Scottsdale is required to so indemnify. But an action seeking a declaratory judgment regarding an insurer's duty to

indemnify is premature where, as here, "the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action." *Specialty Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (quoting *Hout v. Coffman*, 126 A.D.2d 973, 973 (N.Y. App. Div. 1987)); *see also Am. Auto*, 847 F. Supp. 2d at 454 (quoting *Specialty Nat'l*); *Maldonado v. S. Bronx. Dev. Corp.*, 888 N.Y.S.2d 255, 26 (App. Div. 2009) ("While the duty to defend is clear, we note that issues of fact as to liability in the underlying personal injury action render premature a finding that Food Bazaar has a duty to indemnify CP."); *N. River Ins. Co. v. ECA Warehouse Corp.*, 568 N.Y.S.2d 71, 72 (App. Div. 1991) ("Since resolution of the second issue upon which plaintiff seeks declaratory relief, i.e., whether it is required to indemnify defendant, depends upon resolution of the underlying action, that portion of the complaint which seeks such relief must be dismissed as premature."). The Court cannot determine whether Scottsdale is required to indemnify United under the Ye Action or Li Action until it becomes clear what, if any, activities United is liable for. And because the Azadalli Action has already been dismissed and United was not found liable for damages, the question of indemnification in that case is moot. The parties' motions for summary judgment as to Scottsdale's duty to indemnify are therefore denied.

### 5. Rescission of the Scottsdale Polices

United seeks summary judgment on Scottsdale's sixth cause of action, which seeks rescission of the Scottsdale Policies in their entirety based on United's alleged withholding of material information from Scottsdale during contract negotiations. The Amended Complaint does not specify the nature of the information withheld, other than to alleges that "[d]uring the course of its investigation in connection with the 60th Street actions, Scottsdale learned that,

when applying for the Scottsdale Policies, United failed to disclose a material practice concerning the application for permits in connection with construction jobs," which information Scottsdale relied on "in determining that it would issue the Scottsdale Policies, in assessing the United's [sic] liability exposure, and in determining the premiums to be charged for each of the Scottsdale Policies." (Am. Compl. at ¶¶ 57, 60.)

The summary judgment briefing provides amplification of this issue. United's principal, Antonio Morales, stated in a signed statement he provided to Scottsdale that United never performed work at the 60th Street Location and that he instead allowed an unlicensed friend, John Notarnicola, to use Morales' general contractor's license so that Notarnicola could perform work there. Scottsdale claims that "United failed to disclose to Scottsdale at the time that it applied for insurance that it allowed other companies, including Notarnicola's, to use Morales' general contractors' license and United's machinery." (Pl.'s Mem. Opp'n Summ. J. (Doc. No. 30-25) at 12.)

In opposition, United points to the sworn depositions of both Morales and Notarnicola in which both testify that United had, in fact, been performing work at the location "under Mr. Notarnicola's project supervision after Mr. Notarnicola had properly secured United's permits." (Def.'s Mem. Supp. Summ. J. at 15–16.) Asserting that this deposition testimony is the only admissible evidence on summary judgment, United claims that they fully support its motion to dismiss the rescission claim. (*Id*.) United's position fails for two reasons.

First, it appears that the central question on this claim is Notarnicola's status – for example, whether he was an independent contractor, an employee of United, or something else. Critically, United's 56.1 Statement makes no mention of any of the facts upon which it relies in support of its motion for summary judgment on this issue. (*See* Def.'s Rule 56.1 Statement

18

(Doc. No. 30-2).)  Nor is there any discussion in their memoranda of the legal standard under which the Court should consider whether the statements constitute a misrepresentation. And issues regarding the materiality of misrepresentations are typically questions for the jury.  *See, e.g.*, *Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, No. 94-CV-2727 (WK) (AJP), 1997 WL 906427, at *7 (S.D.N.Y. Sept. 12, 1997).  Thus, United has failed to properly present the Court with undisputed facts from which it can conclude that summary judgment is appropriate.

Second, the conflicting statements of Morales raise a credibility question that cannot properly be resolved on summary judgment.  Whether admissible or not in the context of summary judgment, Morales' unsworn statement is significant fodder for impeachment on the central question of Notaricola's role at the 60th Street Location.  And Notarnicola's own deposition raises questions of fact as well.  (*See, e.g.*, Notarnicola's Deposition (Doc. No. 29-31) at 21–22 (testifying that he was "indirectly" and employee of United, "because I owed [Morales] money from a previous job, I helped negotiate this job and I told him in exchange for the money that I owe you, I will supervise the job.").)  For these reasons as well, United's motion for summary judgment on the rescission claim fails.

### 6.  Reimbursement of Scottsdale's Fees in the Underlying Actions

Scottsdale seeks reimbursement of costs it has expended thus far in defense of United against the Underlying Actions, alleging that, because United is not entitled to coverage under the Scottsdale Policies, it has been unjustly enriched by Scottsdale's defense. (Am. Compl. at ¶¶ 67–69.)  Indeed, Scottsdale has defended United in all of the Underlying Actions, and at the time that it informed United of its intention to disclaim its duty to defend, indicated that it would continue to defend United pending the outcome of this declaratory judgment action.  (*See* Ye Action and Li Action Disclaimer (Doc. No. 30-13); Azadalli Action Disclaimer (Doc. No. 30-

14); *see also* Pl.'s Resp. Def.'s Rule 56.1 Statement at ¶¶ 19–20) (not contesting incorporation of the disclaimers into 56.1 Statement).)

This cause of action is wholly premised upon a finding that Scottsdale does not have a duty to defend United, stating that "[b]ecause United is not entitled to coverage under the Scottsdale Policies, Scottsdale is entitled to reimbursement of the defense costs that it incurred in defending United in the Underlying Actions." (Am. Compl. at ¶ 68.) Because the Court has found that Scottsdale does have a duty to defend United, the Court awards summary judgment to United on the cause of action seeking for United to reimburse Scottsdale for the costs incurred in defense of the Underlying Actions.

### 7. Reimbursement of United's Fees in This Action

United seeks reimbursement from Scottsdale of the fees it has incurred defending itself in this action. "Under New York law, it is well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk." *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005) (internal quotation marks and citations omitted). The New York Court of Appeals, however, has carved out a narrow exception to this rule, and "an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 598 (2004); *see also Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979); *Liberty Surplus*, 420 F.3d at 67. The underlying rational for the rule requiring reimbursement of attorneys' fees where an insurer attempts to disclaim its duty to defend is that the insurer's duty to defend extends to defense of "any actions arising out of the occurrence,"

including the action in which the insurer attempted to disclaim its duty to defend. *Mighty Midgets*, 47 N.Y.2d at 21.

In this case, Scottsdale sought a declaratory judgment that it had no duty to defend United against the Underlying Actions when it did in fact have a duty to do so, which brings this action within the scope of the exception.[7] Scottsdale, however, objects that a request for attorneys' fees is premature because United has not yet prevailed on the merits of this action, arguing that, regardless of the Court's decision on Scottsdale's duty to defend under the various policy exceptions, Scottsdale's cause of action for rescission of the Scottsdale Polices must be preserved for trial. (Pl.'s Mem. Opp'n Summ. J. at 14). The Court agrees.

Courts have generally found that where an insured prevails in a duty to defend action, it is entitled to fees, even where the issue of *indemnification* remains unresolved. *See, e.g.*, *Am. Auto Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp.2d 454, 466 (E.D.N.Y. 2012) (citing *Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, No. 10 Civ. 2188 (RMB) (THK), 2011 WL 724737, at *5 (S.D.N.Y. Feb. 23, 2011) ("Since the Court has determined that [insurer] does have a duty to defend and may have a duty to indemnify (depending upon the resolution of fact issues in the State Actions), [insured] ha[s] prevailed on the merits for the purpose of obtaining legal fees.")); *cf. Liberty Surplus*, 420 F.3d at 68 (distinguishing between cases that seek solely to disclaim a duty to indemnify and cases that seek to disclaim both a duty to defend and a duty to indemnify.) However, here, the issue of *rescission* has yet to be determined. Should

---

[7] Scottsdale's argues that "many of the cases United relies upon rejected the very relief United seeks here [for attorneys' fees]," however each of the cases cited by Scottsdale can be easily distinguished from the instant case or is otherwise inapplicable. *See Liberty Surplus Ins. Corp.*, 420 F.3d at 65 (duty to defend not at issue); *Emps. Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824 (2d Cir. 1996) (duty to defend not at issue); *Sakup v. State of New York*, 19 N.Y.2d 519 (1967) (predates *Mighty Midgets* and does not address duty to defend); *Jasam Realty Corp. v. Fidelity & Guar. Ins. Underwriters, Inc.*, No. 13-CV-2333, 2013 WL 3786298, at *3 (E.D.N.Y. July 11, 2013) (parties had settled and therefore plaintiffs could not claim to have "prevailed" on the merits, as required under *Mighty Midgets*).

Scottsdale prevail, the duty to defend could likely change. Thus, United's motion for summary judgment for reimbursement of attorneys' fees is premature.

## CONCLUSION

For the reasons set forth above, the parties' cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART. Scottsdale is required to defend United against each of the Underlying Actions and cannot rely on the specific exclusions it cites to avoid its duty to defend. The cross-motions for summary judgment on Scottsdale's duty to indemnify are denied as premature. United's motion for summary judgment seeking reimbursement of fees it has incurred defending itself in this action is denied as premature. As such, the first, second, third, fourth, fifth, and seventh causes of action in the Amended Complaint are dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 29, 2015

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge